IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT BABNIK, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 21 C 00022 |
| v. | ) ) ) | |
| THE VILLAGE OF ANTIOCH, LARRY HANSON, JAMES KEIM, RICK MORITZ, TOM NOWOTARSKI, GEOFF GUTTSCHOW and ROBERT LONG, | ) ) ) ) ) ) ) ) | Judge Jeffrey I. Cummings |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scott Babnik ("Babnik") brings this case individually, and on behalf of all others similarly situated, against the Village of Antioch ("Village") and six individuals it employed[1] (collectively, "defendants"), seeking legal and equitable relief. In his four-count amended complaint, (Dckt. #47), Babnik asserts that defendants: (1) violated his Fourth Amendment rights; (2) violated his rights under the Federal Wire and Electronic Communications Interception Statute (18 U.S.C. §§2511, 2520); (3) violated his rights under the Illinois Eavesdropping Act (720 ILCS 5/14-2); and (4) invaded his right to privacy under Illinois common law. Defendants bring motions to dismiss the complaint, (Dckt. ##53, 55), for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. For the reasons set forth below,

---

[1] Namely, Larry Hanson (the Village Mayor), James Keim (the Village Administrator), Robert Long (the Village's Attorney), Geoff Guttschow (the Chief of Police), Tom Nowotarski (Village PD officer and head of the investigations section), and Rick Moritz (the Village PD commander). (Dckt. #47 ¶¶26–33).

1

defendants' motions to dismiss the amended complaint are granted for failure to state a claim, and plaintiff is granted leave to file a second amended complaint on or before April 25, 2025.

## I. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) seeks dismissal based on the court's lack of subject matter jurisdiction. "The Court starts with standing, which 'is a threshold question in every federal case because if litigants do not have standing to raise their claims the court is without authority to consider the merits of the action.'" *Ill. Conservative Union v. Illinois*, No. 20 CV 5542, 2021 WL 2206159, at *3 (N.D.Ill. June 1, 2021), *quoting Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). This is so because "Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 172–73 (7th Cir. 2015), *quoting Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 559-60 (1992). In particular, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Silha*, 807 F.3d at 173.

In this case, defendants raise a facial challenge to subject matter jurisdiction by asserting that Babnik has not sufficiently alleged standing. *Silha*, 807 F.3d at 173. At the pleading stage, Babnik has the burden of clearly alleging facts demonstrating each element of Article III standing "for each claim that [he] press[es] and for each form of relief that [he] seek[s]."

2

*Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) (cleaned up); *Lujan*, 504 U.S. at 561. For purposes of defendants' motions to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in Babnik's favor though it will "not accept as true statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *McCauley v. City of Chicago*, 671 F.3d 611, 616–19 (7th Cir. 2011) ( legal conclusions and conclusory allegations merely reciting the elements of claims are not presumed true for purposes of a motion to dismiss).

Furthermore, "[b]ecause *Lujan* mandates that standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof,' it follows that the *Twombly-Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction." *Silha*, 807 F.3d at 174, *quoting Lujan*, 504 U.S. at 561. As such, where a complaint pleads facts that are "merely consistent with" a plaintiff's standing, it stops short of the line—which plaintiff must cross to plead standing—between possibility and plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Yeftich*, 722 F.3d at 915; *McCauley*, 671 F.3d at 616. In other words, where the well-pleaded facts do not permit the court to infer more than the mere possibility of standing, plaintiff falls short of meeting his burden to plead standing. *Iqbal*, 556 U.S. at 678; *Yeftich*, 722 F.3d at 915.

B. **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (cleaned up). "A claim has facial plausibility when it pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is not satisfied by mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," or facts "merely consistent" with a defendant's liability. *Bell Atl. Corp.*, 550 U.S. at 545, 555. Instead, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 620–21 (7th Cir. 2012) (cleaned up), and Babnik's complaint "must actually *suggest* that he has a right to relief, by providing allegations that raise a right to relief above the speculative level," *Fuqua v. SVOX AG*, 754 F.3d 397, 400 (7th Cir. 2014) (cleaned up) (emphasis in original). In other words, he must "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570 (2007).

## II. THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

In his amended complaint, (Dckt. #47), Babnik, a former police officer who is the spouse of an employee of the Village of Antioch Police Department ("Village PD"), (*id*. ¶63), alleges the following facts.

Prior to 2012, the Village employed dispatchers who used a computer system to record phone calls to the Village PD. (*Id*. ¶38). In 2012, the Village outsourced its dispatch services, and the Village PD's command staff officers installed the same computer system previously used by the employed dispatchers in the Village PD's Investigations Department's computer system. (*Id*. ¶¶39–40). The purpose of the recording system was "to monitor, surveil and record non-emergency calls conducted on [Village PD] landline telephones." (*Id*. ¶¶3, 8). Village PD officers, including defendants Moritz and Nowotarski, used the system's capabilities as "a non-routine tool of investigation to gather evidence on people and their conversations." (*Id*. ¶¶8, 49).

4

The Village PD recorded calls without notifying callers that the calls would be recorded. (*Id.* ¶5).

In 2015, the Village hired Steve Huffman as the Chief of the Village PD. (*Id.* ¶4). Huffman learned about the Village PD phone recording system when Moritz "asked if he wanted to hear some of the phone call recordings they had obtained." (*Id.* at ¶6). Huffman thereafter met with Long, one of the Village's attorneys, and expressed his view that the Village PD's recording system needed to be reported to the State's Attorney because he believed that the system violated the rights of people who used and communicated on the non-emergency Village PD telephone lines. (*Id.* ¶10). Long disagreed and told Huffman (a non-party who was later involuntarily separated from his position) that the Village PD's recording system did not need to be reported. (*Id.* ¶11). Eventually, in July 2020, the Village revealed that the Village PD had been recording non-emergency calls on Village PD telephone lines for at least three years without notifying callers that their calls were being surveilled and recorded. (*Id.* ¶5).

During the relevant period,[2] Babnik—for personal reasons—made non-emergency calls using the Village PD's landline phones that were located in a "semi-public area of the Police Department." (*Id.* ¶¶47, 48, 62). Babnik was granted permission to park his personal car in the parking lot, (*id.* ¶66), and "the nature of [his] job granted him access to areas within the [Village PD facility], (*id.* ¶67). In addition, Babnik regularly entered the Village PD's facility and used its non-emergency telephone lines for personal and private reasons. (*Id.*).

Despite Babnik's expectation otherwise, his calls were "exposed to, monitored by, surveilled, and/or recorded by the . . . surveillance and recording system." (*Id.* ¶72.) For

---

[2] The "relevant time period" is not defined in the amended complaint, although plaintiff alleges that the recording system in had been in operation since approximately 2012. (*Id.* ¶7).

example, Moritz mentioned personal matters to Babnik that Babnik discussed during his personal phone calls on the PD landline. (*Id.* ¶73.)

Plaintiff, and the class that he seeks to represent, made calls to and from the Village PD without knowledge that their calls may have been recorded by the Village PD's recording system and without consenting to being recorded. (*Id.* ¶¶68–70). Plaintiff, on behalf of himself and the putative class, seeks an award of damages and unspecified equitable relief. (*Id.* ¶115).

## III. ANALYSIS

### A. Plaintiff has Standing.

As an initial matter, defendants assert that Babnik's amended complaint fails for the same reason his prior complaint failed—he cannot establish standing. (*See* Dckt. #39 (*Babnik v. Vill. of Antioch*, No. 21-CV-00022, 2023 WL 8451811 (N.D.Ill. Dec. 6, 2023)).[3] In particular, defendants assert that Babnik has failed to sufficiently allege that he "suffered a concrete and particularized actual injury" or that his injury is fairly traceable to their actions. (Dckt. #71 at 2). The Court disagrees because Babnik's amended complaint now includes allegations sufficient to support standing under the applicable standard. *See, e.g., Soto v. GNC Holdings, LLC*, No. 24-CV-3613, 2025 WL 662135, at *2 (N.D.Ill. Feb. 28, 2025), *quoting Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 801 (7th Cir. 2016) ("At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'").

In particular, Babnik alleges that "Antioch's command staff officers, including Commander Moritz and Nowotarski, connected the computer system formerly used by the

---

[3] Babnik's original complaint was also deficient regarding his sought-after injunctive relief due to Babnik's failure to plead "a real and immediate threat of a future injury" sufficient to support standing. (*See* Dckt. #39 (*Babnik*, 2023 WL 8451811, at *3, *quoting Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604, 613 (7th Cir. 2020)). He no longer seeks injunctive relief. (*See* Dckt. #47 ¶115).

6

dispatchers to the Police Department's centralized telephone system" which was "connected to all the landline telephones installed in the Police Department." (Dckt. #47 ¶¶41–42). The staff officers used the computer system as a "non-routine tool of investigation" (*id.* ¶49), and Babnik had several private and personal calls using the landline phones, (*id.* ¶64), that were, in fact, "exposed to, monitored by, surveilled, and/or recorded" by the computer system, (*id.* ¶72). Thus, Babnik has now alleged that he made calls on and received calls from a landline that was allegedly recorded by defendants. (*See id.* ¶¶40, 62; *Cf.* Dckt. #39 (*Babnik*, 2023 WL 8451811, at *3)); *see also Alicea v. Cook Cnty.*, 88 F.4th 1209, 1215-16 (7th Cir. 2023) (standing established where plaintiff "affirmatively identified" she occupied a cell subject to camera monitoring)).

Babnik further alleges that his calls have been intruded upon and monitored by defendants as evidenced by his interactions with Moritz where Moritz appeared to know about personal matters that had not been discussed with him but that were discussed during the personal phone calls that Babnik made using the Village PD's landline telephone system. (Dckt. #47 ¶73). This general allegation of injury is sufficient to establish standing at this stage. *Six Star Holdings*, 821 F.3d at 801; *see also LeCrone v. Ohio Bell Tel. Co.*, 201 N.E.2d 533, 538 (Ohio Ct.App. 1963) ("the best circumstantial proof [of eavesdropping] would be the repeating of information which could not otherwise be obtained.").

    **B. Plaintiff Fails to State a Claim Upon Which Relief Could be Granted.**

        **1. Plaintiff's Federal Claims Fail because Plaintiff Does Not Have a Reasonable Expectation of Privacy.**

Babnik brings two federal claims. Count I is brought pursuant to 42 U.S.C. §1983 against all defendants and alleges a violation of Babnik's Fourth Amendment rights against

7

unreasonable search and seizures and Count II alleges a violation of the Electronic Communications Privacy Act, 18 U.S.C. §§2511 and 2520 (the "Wiretap Act") against Moritz, Nowotarski, and the Village. The crux of both claims is that it was illegal for defendants to record Babnik's personal phone calls when he used the Village PD's landline phones.

To state a claim under the Fourth Amendment and the Wiretap Act, Babnik must plead facts showing that he had a reasonable expectation of privacy. *See, e.g., Lawlor v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 17 CV 117, 2020 WL 1166223, at *13 (N.D.Ill Mar. 11, 2020) (citing cases); *Narducci v. Moore*, 572 F.3d 313, 319 (7th Cir. 2009) ("Once an employee demonstrates a reasonable expectation of privacy, he must then demonstrate that the search was unreasonable" to establish a Fourth Amendment violation); *Walden v. City of Providence, R.I.*, 596 F.3d 38, 54 (1st Cir. 2010) (Congress enacted Title III in response to Supreme Court decisions and "in doing so attempted to provide at least as much protection as the Constitution affords."); *Abbott v. Vill. of Winthrop Harbor*, 953 F.Supp. 931, 936 (N.D.Ill. 1996) ("Title III reflects Congress's attempt to codify the constitutional standards established by the Supreme Court."). Therefore, the Court addresses Babnik's "reasonable expectation of privacy" and the sufficiency of his allegations for both claims under the same standard. *See Waldren*, 596 F.3d at 54 ("If under Title III law the defendants could have concluded their actions were not illegal, then they could reasonably have concluded it was not clearly established that the same actions would violate the Constitution."); *Diana v. Oliphant*, 441 Fed.Appx. 76, 81 (3d Cir. 2011) (same).

As the Seventh Circuit has explained:

> It is routine, standard, hence 'ordinary' for all calls to and from the police to be recorded. Such calls may constitute vital evidence or leads to evidence, and monitoring them is also necessary for evaluating the speed and adequacy of the response of the police to tips, complaints, and calls for emergency assistance. . . .

8

> To record all calls to and from a police department is . . . a routine police practice. If 'ordinary course' of law enforcement includes anything, it includes that.

*Amati v. City of Woodstock*, 176 F.3d 952, 954-55 (7th Cir. 1999) (cleaned up);[4] *Kelsey v. Sheehan*, 20 Fed.Appx. 538, 539 (7th Cir. 2001) ("Federal law permits a police department to record calls on official lines."). The First, Third, and Sixth Circuits have similarly held. *See, e.g.*, *Walden*, 596 F.3d at 54-55 (same, citing *Amati*); *Diana*, 441 Fed.Appx. at 80 (same); *Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001) ("Congress most likely carved out an exception for law enforcement officials to make clear that the routine and almost universal recording of phone lines by police departments and prisons, as well as other law enforcement institutions is exempt from the statute. . . . Such a system routinely and indiscriminately records all phone activity in and out of the police department. This practice is well known in the industry and in the general public.").

Importantly, the Seventh Circuit has made clear that express notice that calls will be recorded is not required to invoke the "in the ordinary course of law enforcement" exemption under the Wiretap Act. *Amati*, 176 F.3d at 955; *First v. Stark Cnty. Bd. of Commissioners*, 234 F.3d 1268, 2000 WL 1478389, at *4 (6th Cir. 2000). Moreover, it is equally clear that personal calls can be recorded within the scope of "in the ordinary course of law enforcement" exemption. *Amati*, 176 F.3d at 956 ("That personal as well as official calls were made on the line is irrelevant; *all* employees make personal calls on company phones; if all the lines are tap[p]ed, as is the ordinary practice of police departments, then the recording of personal as well as . . . official calls is within the ordinary course.") (emphasis in original).

---

[4] The Wiretap Act provides a "statutory exclusion [for] eavesdropping 'by an investigative or law enforcement officer in the ordinary course of his duties.'" *Amati*, 176 F.3d at 954, *quoting* 18 U.S.C. §2510(5)(a)(ii).

9

Nonetheless, as plaintiff points out, telephone surveillance is not *per se* lawful because it occurs at a police station. (Dckt. #65 at 18). There is a "boundary between routine noninvestigative uses of electronic eavesdropping and its use either as a tool of investigation (which requires a warrant) or as a device for intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes." *Amati*, 176 F.3d at 956. Courts have also held that a reasonable expectation of privacy can be created by a police department's articulated policy. *Id.* ("What would not be routine would be if the police, in order to trick people into making damaging admissions over the phone, announced that calls to and from the police department were *not* being recorded, and then recorded them anyway.").[5]

Although a reasonable expectation of privacy is frequently a question for a fact finder, a plaintiff must first plead facts sufficient to support a plausible finding that he has such a reasonable expectation. Babnik has failed to do so here. In particular, he alleges that he made his private calls from landline telephones that are located in "the semi-public area of the Police Department." (Dckt. #47 ¶¶47, 48). He does not allege that any defendant (or anyone else for that matter) told him that his calls in the "semi-public" area of the police department would be private. There is no basis to infer that calls made in a "semi-public" area would be "private". Furthermore, despite the repeated assertions in his brief, he does not allege that defendants "invited" him to use the police department's phones for his private calls or that anyone gave him

---

[5] *See also Zaffuto v. City of Hammond*, 308 F.3d 485, 489 (5th Cir.), *on reh'g in part*, 313 F.3d 879 (5th Cir. 2002) (reasonable jury could conclude that plaintiff had a reasonable expectation of privacy in his private calls where the police department's policy led him to believe that calls in his private office would not be recorded); *Opal v. Cencom E 911*, No. 93 C 20124, 1994 WL 559040, at *4 (N.D.Ill. Oct. 5, 1994) ("Smith's actions in advising plaintiffs to have their confidential conversations in the dispatch room and in leaving he room so they could do so created a work environment in which both plaintiffs could reasonably expect to have a private conversation."); *Abbott*, 953 F.Supp. at 942 ("The facts before the court tell the story of a police chief who issued a memorandum which explicitly stated that 3868 would not [be] recorded and then, without issuing contrary notice, surreptitiously recorded private communications conducted on that line.").

"permission" to make private calls on these phones. Moreover, unlike in the multiple cases upon which Babnik relies in his brief (Dckt. #65 at 17-19),[6] Babnik does not allege that the Village PD articulated a policy that made it clear that calls made on phones in "semi-public" areas would be treated as private calls. Finally, Babnik fails to explicitly allege either that defendants were targeting him or using the calls for nefarious purposes which would fall outside the law enforcement exception of the Wiretap Act. *See Amati*, 176 F.3d at 956. As such, he has failed to allege facts plausibly showing that he had a reasonable expectation of privacy.

Accordingly, Babnik's Fourth Amendment violation claim is dismissed without prejudice against all defendants except for Long who is dismissed with prejudice, *see infra* §III(B)(2), and his Wiretap Act violation is dismissed without prejudice against Moritz and Nowotarski and dismissed with prejudice against the Village.[7]

### 2. Defendant Long is Dismissed with Prejudice.

As a threshold matter, Babnik cannot pursue a claim against defendant Long. Babnik includes defendant Long, an attorney for the Village, as a defendant in Claim I (42 U.S.C. §1983, Fourth Amendment violation). The entirety of Babnik's allegations about Long include that Long met with chief of police Huffman (after Huffman learned about the recordings) and told

---

[6] Babnik also relies on the Seventh Circuit's decision in *Narducci*. However, that decision is distinguishable because it concerned the recording of calls into and out of a non-emergency city department." *Narducci*, 572 F.3d at 322 n.4 (noting that "the recording of phone calls into and out of a police department . . . obviously involves different justifications than recording calls into and out of a non-emergency city department.") (citing *Amati*).

[7] Babnik correctly concedes that the Wiretap Act does not impose municipal liability but argues that the Village can still be liable as an indemnitor. *See Abbott*, 205 F.3d at 980 (citing legislative history that "Congress intended to exclude governmental entities from those subject to liability under the Act"); *Franklin v. City of Chicago Police Dep't*, 175 Fed.Appx. 740, 741 (7th Cir. 2005) (reaffirming *Abbott*'s holding that there is no municipal liability under the Wiretap Act).

11

Huffman that the phone recording system did not need to be reported to the State's Attorney, that Long knew of the recording practice, and that Long was a final policymaker, (Dckt. #47 ¶¶9–11, 18, 22, 33). These allegations amount to Babnik's disagreement with Long's legal advice given to his client, the Village.

Plaintiff acknowledges that to ultimately prevail against each defendant, the defendant must have direct connection to the system. (Dckt. #65 at 19–20). Here, Babnik is claiming an unreasonable search and seizure. Babnik attempts to argue that Long is liable here because he served in the "executive office of the village" and that his claims against Long "arise from his individual actions while holding an official position with Antioch, not his conduct as a third party."[8] (Dckt. #65 at 21 (citing Village Ordinance not included in amended complaint)). The Court is not persuaded. Nowhere in Babnik's amended complaint does he mention that Long is an "executive officer" of the Village.

But even if he did, such an allegation would not provide a basis to subject Long to liability under Babnik's Fourth Amendment claim. The sole allegations against Long focus on his *advice* to a non-defendant (Huffman); however, Babnik's claim against Long is based on his alleged violation of Babnik's right to be free from unreasonable search and seizures.[9] The allegations show that Long was not involved until after the telephone call recording system under challenge had been implemented. There are no allegations that Long: (1) provided the other

---

[8] Contrary to Babnik's assertion, the Village Ordinances do not provide Long with any authority over the Village PD or its policy or operations. *See* Antioch Ord. §1-5-4, https://codelibrary.amlegal.com/codes/antiochil/latest/antioch_il/0-0-0-262#JD_1-5-4 (last visited March 31, 2025).

[9] To the extent Babnik could raise a claim premised on Long's advice, it would likely be barred by privilege. In Illinois, "an attorney owes a duty of care only to his client and not to third parties." *Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 592 (7th Cir. 2017).

defendants with advice pertaining to the system before it was set up in 2012; (2) had any involvement whatsoever in setting up or using the system; or (3) had any authority to order the Village Police Chief to shut down the system after he learned of it. Indeed, the only involvement Babnik can point to is Long's alleged advice to Huffman in 2015. This is insufficient to state a claim against Long because "a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981); *Davis v. Zirkelbach*, 149 F.3d 614, 619 (7th Cir. 1998) (a person is liable under §1983 and the Wiretap Act only when he or she has personally engaged in the violation in question).

Accordingly, Babnik's claim against Long is dismissed with prejudice. *See, e.g.*, *Hess*, 72 F.4th at 768 (affirming dismissal with prejudice when the complaint failed to plausibly allege that a defendant "played a role at the level required to impose personal liability" and the party did "not identif[y] any amendments she could make to the complaint to cure the problem.").

### 3. Plaintiff's *Monell* Claim Must Be Dismissed Because He Has Failed to Allege a Constitutional Violation[10]

Plaintiff appears to bring a claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978) in conjunction with his Fourth Amendment claim, which articulates that liability attaches to municipalities when an alleged constitutional violation resulted from an official policy or custom of the entity. To cut to the chase, when there is no constitutional violation, there is no *Monell* liability. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015). Here, Babnik fails to allege a Fourth Amendment violation and so he cannot succeed on a *Monell* theory of liability against the Village.

---

[10] Plaintiff's amended complaint does not explicitly lay out a *Monell* claim, but the parties brief the issue. (*See* Dckt. #53 at 7–10; Dckt. #55 at 7; Dckt. #65 at 21–25; Dckt. #71 at 5–6).

### 4. The Court Relinquishes Jurisdiction Over Babnik's State Law Claims

Upon dismissing Babnik's federal counts, the Court relinquishes jurisdiction of the remaining state counts. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). The Seventh Circuit has embraced a "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Id.* Accordingly, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiffs' pendent state law claims. *See Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Doxtator v. O'Brien*, 39 F.4th 852, 867 (7th Cir. 2022) ("Without any federal claims over which it had original jurisdiction, the district court's decision not to exercise supplemental jurisdiction over the pendent state law claims was not an abuse of discretion."). Accordingly, plaintiffs' state law claims against defendants are dismissed without prejudice.

### CONCLUSION

For all the above reasons, the Court grants defendants' motions to dismiss, (Dckt. #53, #55), and finds as follows: Count I is dismissed with prejudice against defendant Long and dismissed without prejudice against all others; Count II is dismissed with prejudice against defendant Village and dismissed without prejudice against all others; and Counts III and IV are dismissed without prejudice. Babnik has requested leave to amend, and he is granted until April 25, 2025 to file an amended complaint, to the extent that he can do so consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11.

**ENTERED: March 31, 2025**

**Jeffrey I. Cummings
United States District Court Judge**