**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTT BABNIK, individually and on behalf of all others similarly situated,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21-cv-22** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE VILLAGE OF ANTIOCH,** | ) | **Judge Jeffrey I. Cummings** |
| **LARRY HANSON, JAMES KEIM,** | ) | |
| **RICK MORITZ,** | ) | |
| **TOM NOWOTARSKI,** | ) | |
| **GEOFF GUTTSCHOW and** | ) | |
| **ROBERT LONG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Scott Babnik brings this putative class action against the Village of Antioch (the "Village") and certain individuals it employed: Larry Hanson (the Village Mayor), James Keim (the Village Administrator), Geoff Guttschow (the Chief of Police), Tom Nowotarski (a Village Police Department officer and head of the Investigations section), and Rick Moritz (a Village Police Department Commander) (collectively, "defendants"), seeking legal and equitable relief. (Dckt. #84). In his four-count second amended complaint, Babnik asserts that defendants violated: (1) his Fourth Amendment rights; (2) his rights under the Federal Wire and Electronic Communications Interception Statute ("Wiretap Act"), 18 U.S.C. §§2511, 2520,; (3) his rights under the Illinois Eavesdropping Act ("Eavesdropping Act"), 720 ILCS 5/14-2,; and (4) his right to privacy under Illinois common law. Defendants bring motions to dismiss the complaint, (Dckt. ##87, 88), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, defendants' motions to dismiss are granted as to Babnik's claims against Hanson, Keim, Guttschow, and the Village, and denied as to his claims against Moritz and Nowotarski.

## I.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires a plaintiff to "go beyond mere speculation or conjecture." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025).  The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nonetheless, the "notice-pleading standard is deliberately undemanding." *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (cleaned up).  To this point, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it, *Berk v. Choy*, 607 U.S. ___, 2026 WL 135974, at *5 (2026), and the Rules likewise "do not require a plaintiff to plead legal theories." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996).  Moreover, in opposing a Rule 12(b)(6) motion, a plaintiff is free to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (cleaned up).

When considering a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint in the light most favorable to the plaintiffs and accept[s] all well-pleaded factual allegations as true." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).  Nonetheless, "district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim." *Esco*, 107 F.4th at 678–

2

79 (cleaned up). Dismissal is only warranted if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).

## II.     PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint on January 4, 2021, alleging the same four claims he now brings, along with a claim that defendants denied him equal protection under the law. (Dckt. #1). Defendants moved to dismiss for lack of standing and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. (Dckt. ##17, 18). The Court dismissed plaintiff's equal protection claim with prejudice and granted defendants' motions with leave to amend as to the remaining claims. (Dckt. #39). Plaintiff filed an amended four-count complaint asserting his present claims on February 2, 2024. (Dckt. #47). Defendants again moved to dismiss for lack of standing and failure to state a claim. (Dckt. ##53, 55). The Court granted defendants' motions with prejudice as to plaintiff's Fourth Amendment claim against Robert Long (the Village attorney) and his Wiretap Act claim against the Village, and without prejudice as to plaintiff's remaining claims. (Dckt. #77). Plaintiff then filed his second amended complaint, the operative complaint in this matter, on May 30, 2025. (Dckt. #84).

## III.    THE PERTINENT FACTUAL ALLEGATIONS

Babnik is a former police officer and the spouse of a former employee of the Village of Antioch Police Department (the "Village PD"). (Dckt. ##70 at 5; 84 ¶68). His wife Christine worked for the Village PD from 2005 to 2016, where Moritz was her supervisor. *Babnik v. Vill. of Antioch*, No. 18-CV-04490, 2023 WL 4817655, at *1 (N.D.Ill. July 27, 2023).[1] During the

---

[1] "Courts routinely take judicial notice of the . . . contents of filings in other courts." *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016); *United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020).

time pertinent to this case, Babnik regularly visited the Village PD in person, and he was granted permission by Moritz and Nowotarski to park his personal vehicle in the Village PD's parking lot. (Dckt. #84 ¶¶69–70). In December 2016, the Village terminated Christine at the conclusion of her approved FMLA leave. *Babnik*, 2023 WL 4817655, at *4. Christine brought suit against the Village in June 2018, and her case settled in January 2024. *Babnik*,, No. 18-CV-04490, Order (N.D.Ill. Jan. 12, 2024).

Prior to 2012, the Village employed dispatchers who used a computer system to record phone calls to the Village PD. (Dckt. #84 ¶38). In 2012, the Village outsourced its dispatch services, and Village PD command staff officers, including Moritz and Nowotarski, connected the computer system formerly used by the dispatchers to the Village PD's landline telephone system. (*Id.* ¶¶39, 41). The purpose of doing so was "to monitor, surveil, and record non-emergency phone calls conducted on the [Village PD] landline telephones." (*Id.* ¶8). The Village had no policy or procedure for using the recording system, as it was "installed, maintained, and used surreptitiously." (*Id.* ¶56).

In 2015, the Village hired Steve Huffman as the Chief of the Village PD. (*Id.* ¶4). Huffman learned about the Village PD's recording system when Moritz asked Huffman "if he wanted to hear some of the phone call recordings they had obtained." (*Id.* ¶6). Upon learning of the recording system, Huffman met with Village Attorney Long to express his belief that the recording system "violated the rights of people who used and communicated on non-emergency [Village PD] landline telephones." (*Id.* ¶10). Long told Huffman that the recording practice did not need to be reported, and no action was taken. (*Id.* ¶11). In July 2020, the Village revealed that the Village PD had been recording non-emergency calls on Village PD telephone lines for at least three years without notifying callers that their calls were being recorded. (*Id.* ¶5).

During the time period when the recording system was still connected to the Village PD landline telephone system, several landline telephones were installed in private offices within the station and each of these offices had a door that could be closed while the telephone was being used. (*Id.* ¶50). One landline telephone was installed in a conference room located in a semi-public area of the police station, which had a door that could be closed. (*Id.* ¶49). There were "no visible indications" that the conference room, or phone calls made from it, were monitored or recorded. (*Id.*).

Babnik was "explicitly invited" by command-staff officers, including Moritz and Nowotarski, to make personal and private calls while using the Village PD landline telephone systems in private spaces within the station.[2] (*Id.* ¶72). Indeed, at the invitation of Moritz and Nowtarski, Babnik made several private and personal telephone calls using the Village PD landline telephone system in private spaces within the station. (*Id.* ¶77). In each such instance, Village PD employees left the room. (*Id.* ¶74). Nonetheless, Babnik's personal and private calls on the Village PD landline telephone system were "exposed to, monitored by, surveilled, and/or recorded" by the Village PD recording system. (*Id.* ¶78). Babnik believes that his calls were surreptitiously recorded based, in part, on one occasion when he encountered Moritz in the Village PD's parking lot and Moritz appeared to know about personal matters that Babnik had discussed during private phone calls he made using the Village PD landline. (*Id.* ¶¶70, 79).

"[U]pon information and belief," Babnik's calls were "targeted for surveillance" and "used for nefarious purposes including discrediting employees and leveraging confidential information for personal benefit or gain." (*Id.* ¶¶80–81). As a result of defendants' recording,

---

[2] Other citizens and non-employees of the Village PD were also "regularly invited and/or permitted" to use the landline telephone system to make private and personal calls. (Dckt. #84 ¶52).

Babnik has suffered injuries including "suffering, anguish, monetary damages, loss of reputation, humiliation and other injury and damages." (*Id.* ¶¶107, 127).

## IV.    ANALYSIS

### A.    Plaintiff's Section 1983 Claims for Violation of His Fourth Amendment Right Against Unreasonable Search and Seizure Against Hanson, Keim, and Guttschow Are Dismissed.

Babnik brings a Fourth Amendment claim pursuant to Section 1983 against all defendants, alleging that they violated his right against unreasonable search and seizure by illegally recording his personal phone calls when he used the Village PD's landline telephones. (*Id.* ¶¶101–107).  Defendants raise two arguments in response.  First, they argue that no reasonable expectation of privacy exists for calls made to or from a police department.  (Dckt. ##87 at 4–6; 88 at 5–6).  Second, they argue that plaintiff fails to allege defendants' personal involvement in the alleged conduct.  (Dckt. ##87 at 8–9; 88 at 9–10).  For the reasons that follow, defendants' motions to dismiss are denied with respect to Babnik's Fourth Amendment claims against Moritz and Nowotarski, and granted with respect to his claims against Hanson, Keim, and Guttschow.

### i.    Reasonable Expectation of Privacy

"The Fourth Amendment guarantees citizens the right to be free from unreasonable search and seizure." *Abbott v. Vill. of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000)  To state a Section 1983 claim for a Fourth Amendment violation, Babnik "must plausibly allege that: (1) there was a search or seizure; and (2) the search or seizure was unreasonable." *Lawlor v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 17 CV 117, 2020 WL 1166223, at *13 (N.D.Ill. Mar. 11, 2020).  An unreasonable search occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013) (cleaned up).

Many courts have found as a general matter that no reasonable expectation of privacy exists when a person makes calls to, or receives calls from, a police department. *See, e.g., Amati v. City of Woodstock*, 176 F.3d 952, 954–55 (7th Cir. 1999) ("It is routine, standard, hence 'ordinary' for all calls to and from the police to be recorded."); *Kelsey v. Sheehan*, 20 Fed.Appx. 538, 539 (7th Cir. 2001) ("Federal law permits a police department to record calls on official lines."); *Walden v. City of Providence, R.I.*, 596 F.3d 38, 54–55 (1st Cir. 2010) ("[R]easonable officials [could] conclude that recording all calls into and out of a police station was neither illegal nor unconstitutional."); *Diana v. Oliphant*, 441 Fed.Appx. 76, 81 (3d Cir. 2011) (finding the same); *Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001) ("[A] system [that] routinely and indiscriminately records all phone activity in and out of the police department . . . is well known in the industry and in the general public."). Nonetheless, this Court has previously recognized that telephone surveillance is not *per se* lawful because it occurs at a police station, (Dckt. #77 at 10 & n.5 (citing cases)), and where a plaintiff can plausibly allege a reasonable expectation of privacy, they may proceed at the pleading stage, "even if . . . actual proof of the facts alleged is improbable." *Berk*, 2026 WL 135974, at *5.

Here, Babnik has plausibly alleged that he had a reasonable expectation of privacy when making personal phone calls on landline telephones in the Village PD. Indeed, he was "explicitly invited" by Moritz and Nowotarski to make "personal and private calls using the Police Department's landline telephones in private spaces within the station," including a landline in the "semi-public area" of the conference room and "private office areas of the station." (Dckt. #84 ¶¶49, 72). Each of the conference rooms and offices had a door that could be closed during use to obtain privacy. (*Id.* ¶¶49, 50). And Babnik alleges that, in each instance, he "was left alone and/or Police Department employees left the room" when he took his calls. (*Id.* ¶74).

Moreover, Babnik—whom defendants assert was not a typical member of the public—was a former police officer, (Dckt. #70 at 5), whose wife still worked in the department and was embroiled in contentious discussions with Moritz about her employment for several months before she was terminated. *Babnik*, 2023 WL 4817655, at *2–4. Plaintiff had a parking space at the station and still reported to the department for work on a daily basis. (Dckt. #84 ¶¶68, 70). Babnik's relationship with the Village PD, in combination with his allegations about the explicit invitations he received to take personal phone calls on Village PD telephones, supports a plausible inference that Babnik had a reasonable expectation of privacy in making those calls. *See, e.g.*, *Zaffuto v. City of Hammond*, 308 F.3d 485, 489 (5th Cir.), *on reh'g in part*, 313 F.3d 879 (5th Cir. 2002) (finding that a reasonable jury could conclude that plaintiff had a reasonable expectation of privacy in his private calls where the police department's policy led him to believe that calls in his private office would not be recorded); *Opal v. Cencom E 911*, No. 93 C 20124, 1994 WL 559040, at *4 (N.D.Ill. Oct. 5, 1994) ("Smith's actions in advising plaintiffs to have their confidential conversations in the dispatch room and in leaving the room so they could do so created a work environment in which both plaintiffs could reasonably expect to have a private conversation.").

ii. **Personal Involvement**

To state a claim for individual liability under Section 1983, Babnik must allege that each defendant (1) was "personally involved in the constitutional violation," and (2) acted with "the necessary state of mind" for the constitutional provision at issue. *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025). Personal involvement requires a "causal connection" between the individual sued and the alleged misconduct. *Id.* Even a supervisor can be held individually

liable under Section 1983 if a plaintiff is able to plead that the supervisor "either caused or participated in the constitutional deprivation at issue." *Id.*

Babnik plausibly alleges the personal involvement of Moritz and Nowotarski. Defendants disagree, citing the lack of allegations about the time frame when the recording system was installed, and other details about if or how defendants used the alleged recordings, (Dckt. ##87 at 8–9; 88 at 9–10), but their arguments are not prevailing. Personal involvement for claims brought under Section 1983 only requires plaintiff to allege a causal connection between Moritz and Nowotarski and the alleged recording of Babnik's phone calls. Plaintiff clearly alleges that Moritz and Nowotarski "connected the [recording system] to the Police Department's centralized landline telephone system," (Dckt. #84 ¶41), and "explicitly invited" Babnik "to make personal and private calls" using the landline telephones, (*id.* ¶72), thus exposing Babnik to calls that "were, in fact, exposed to, monitored by, surveilled, and/or recorded" for "nefarious purposes," (*id.* ¶¶78, 81). These allegations are sufficient to plead a "causal connection" between Moritz and Nowotarski's actions and Babnik's surveillance. "[E]vidence of the claim is *not* required." *Berk*, 2026 WL 135974607, at *5 (emphasis in original).

With respect to Hanson, Keim, and Guttschow, however, Babnik fails to allege their personal involvement in the alleged surreptitious recording of his phone calls. Indeed, the sole allegation that Babnik makes against these three defendants is to identify the position that each defendant had. (*See* Dckt. #84 ¶28 (identifying Hanson as the Mayor of Antioch); ¶¶4, 29 (identifying Keim as the Village Administrator who recommended hiring Huffman as the Police Chief); ¶30 (identifying Guttschow as the Police Chief who served in a command staff position during the relevant time)). Babnik does not allege that any of these three defendants took any

action directed towards him, let alone any action that violated his constitutional or statutory rights.

Instead, Babnik makes the conclusory allegations that "[t]he Village of Antioch and its high-ranking officials facilitated, permitted, tolerated, and condoned the Police Department's . . . conduct by maintaining and keeping secret the surveillance and recording system," and that "each and every Defendant caused or participated in the Police Department's unconstitutional and illegal surveillance and recording activity." (Dckt. #84 ¶¶23, 62). These conclusory allegations are insufficient to impose liability on Hanson, Keim, and Guttschow because they do not—without more—plausibly allege each defendant's personal involvement in the surreptitious recording of Babnik's personal and private calls. As the Seventh Circuit has held, "vague" statements that "one or more of the Defendants had engaged in certain acts . . . [do] not adequately connect specific defendants to illegal acts" for the sake of alleging liability under Section 1983. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (cleaned up).

Accordingly, defendants' motions to dismiss are denied with respect to Babnik's Section 1983 claims against Moritz and Nowotarski, and granted with respect to his Section 1983 claims against Hanson, Keim, and Guttschow.

**B.      Plaintiff's Claims Against the Village Are Dismissed.**

**i.      The *Monell* Claim**

Babnik brings a Fourth Amendment claim pursuant to Section 1983 against the Village. The Village can only be held liable under Section 1983 if the alleged constitutional violation was caused by an official "policy or custom." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Defendants move to dismiss this claim on the grounds that Babnik has failed to allege: (1) that any individual violated his constitutional rights; and (2) that any

constitutional injury he allegedly suffered was caused by a policy or custom of the Village. (Dckt. ##87 at 6–8; 88 at 6–9). Although Babnik has alleged facts sufficient to state a Section 1983 claim against Moritz and Nowotarski, *supra* Section IV.A., he has failed to adequately allege that his claimed constitutional injuries were caused by a Village policy or custom as is required to state a *Monell* claim against the Village.

"To state a *Monell* claim against a municipality . . . a plaintiff must allege facts sufficient to show that the alleged constitutional violation was caused by '(1) an express municipal policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) [an act] by a person with final policymaking authority." *Connelly v. Cook Cnty. Assessor's Off.*, 583 F.Supp.3d 1142, 1147–48 (N.D.Ill. 2022) (citing *Gable v. City of Chicago*, 296 F.3d 531, 536 (7th Cir. 2002)).

To begin, Babnik cannot argue that his constitutional injury was caused by an express policy of the Village because his complaint expressly alleges that "Antioch did *not* have or maintain an approved policy or procedure for using" the recording system because it was "installed, maintained, and used surreptitiously." (Dckt. #84 ¶56) (emphasis added). The Court need not, and will not, ignore facts alleged in the complaint that undermine Babnik's claim. *Esco*, 107 F.4th at 678–79 (cleaned up).

Babnik similarly fails to plausibly allege that any violation of his rights took place pursuant to a "widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law." *Gable*, 296 F.3d at 537. Although the Court does not impose a "heightened pleading standard" for *Monell* claims, *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), Babnik must still include allegations supporting the inference that he was injured

by a practice so widespread as to "permeate[] a critical mass of an institutional body," rather than "individual misconduct." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (cleaned up). The allegations of his complaint negate the existence of an actionable "practice." To reiterate, Babnik alleges that he was injured by the use of a recording system that was "installed, maintained, and used *surreptitiously*" by Moritz and Nowotarski "for nefarious purposes including discrediting employees and leveraging confidential information for personal benefit or gain." (Dckt. #84 ¶¶56, 80–81) (emphasis added). Babnik further alleges that Village Police Chief Huffman wanted to report the recording system and its purportedly illegal use to the State's Attorney's Office after he learned of it. (*Id.* ¶¶9–10). Babnik's conclusory allegations of customs, policies, practices, or patterns are patently insufficient. *See, e.g.*, *Brooks*, 578 F.3d at 581 (explaining that the court "need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (cleaned up); *Sam v. Dekalb Hous. Auth.*, 3:25-cv-50219, 2026 WL 63489, at *4 (N.D.Ill. Jan. 8, 2026) (finding that "threadbare reference" to policies or customs are insufficient to state a *Monell* claim).

Finally, Babnik fails to allege that a final policymaker caused his private phone calls to be surreptitiously recorded. "A person's status as a final policymaker under §1983 is a question of state or local law." *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004). Final policymaking authority "may be granted directly by statute or delegated or ratified by an official having policymaking authority," *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999), but it only exists where "there is no higher authority." *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). The authority in question must be the "authority to *set policy* for [a given act]," not merely "the final authority to [perform an act]." *Kujawski*, 183 F.3d at 739 (emphasis added). In addition to "positive law, including ordinances,

rules and regulations," courts consider: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority."  *Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009) (cleaned up).

The parties dispute who in Antioch has final policymaking authority over the recording of non-emergency calls on landline telephones in a local police department.[3]  Their disagreement is irrelevant, however, because Babnik does not allege (1) unconstitutional acts by a final policymaker or (2) that any identified person with final policymaking authority delegated their final policymaking authority to Moritz and/or Nowotarski, the only two individuals who Babnik alleges had personal involvement in the surreptitious recording of his private phone calls. Babnik's conclusory allegations that Moritz (a police department commander) and Nowotarski (a police officer and head of the investigations section) "had or [were] delegated with final policymaking authority" are, once more, patently insufficient.  *Brooks*, 578 F.3d at 581; *Sam*, 2026 WL 63489, at *4.  Babnik makes no allegation about the source or substance of their alleged final policymaking authority.  (Dckt. #84 ¶¶31–32).  And, again, Babnik alleges that the Village Police Chief (Huffman)—who supervised Moritz and Nowotarski—tried to stop the "illegal surveillance and recording practice" once he learned of it.  (*Id.* ¶¶9–11).  In short, Babnik "alleges no facts" to support his claim that Moritz or Nowotarski "was the final policymaker for the [Village] with respect to [use of the recording system]."  *Connelly*, 583 F.Supp.3d at 1149.

Accordingly, Babnik's *Monell* claim against the Village of Antioch is dismissed.

_____

[3] Babnik alleges that the individual with final policymaking authority is the Village Mayor (Hanson), (Dckt. #84 ¶28), whereas defendants contend that it is the Police Chief (Huffman), (Dckt. ##87 at 8; 88 at 9).

### ii.     State Law Claims

Babnik alleges violations of the Illinois Eavesdropping Act and his common law right of privacy against the Village.  For the reasons that follow, these claims are dismissed.

The Eavesdropping Act provides civil remedies, including actual and punitive damages, recoverable from an eavesdropper, an eavesdropper's principal, or both.  720 ILCS 5/14-6. "Eavesdropper" is defined as "any person, including any law enforcement officer and any party to a private conversation, who operates or participates in the operation of any eavesdropping device contrary to the provisions of this Article."  720 ILCS 5/14-1(b).  The Act defines "principal" as any person who:

(1) Knowingly employs another who illegally uses an eavesdropping device in the course of such employment; or

(2) Knowingly derives any benefit or information from the illegal use of an eavesdropping device by another; or

(3) Directs another to use an eavesdropping device illegally on his or her behalf.

720 ILCS 5/14-1(c).  Courts have construed this to require that the Village knew that others were eavesdropping on the Village PD's recorded landlines, or that the Village "knowingly derived any benefit or information" from the alleged eavesdropping.  *See Abbott v. Vill. of Winthrop Harbor*, 1995 WL 51553, at *9 (N.D.Ill. Feb. 4, 1995) (citing *Cebula v. Gen. Elec. Co.*, 614 F.Supp. 260, 267–68 n.4 (N.D.Ill. 1995)).

Babnik fails to state a claim under the Eavesdropping Act against the Village of Antioch because the Village is neither an "eavesdropper" nor a "principal" within the meaning of the Act. Courts construe the word "person" in the Act to refer only to a natural person, so the Village cannot be held liable as an eavesdropper.  *See Abbott*, 1995 WL 51553, at *9.  Moreover, Babnik fails to allege that the Village "knowingly derived any benefit" from the alleged eavesdropping, foreclosing the Village from being held liable as a principal.  While Babnik alleges that "[t]he

14

Village of Antioch . . . maintain[ed] and ke[pt] secret the surveillance and recording system," (Dckt. #84 ¶23), this in itself (as stated above) is not illegal and Babnik does not allege that the Village knew of any instance of eavesdropping.

For similar reasons, Babnik fails to state a common law right of privacy claim against the Village. Babnik seeks to hold the Village liable for the alleged conduct under the doctrine of *respondeat superior*. (*Id.* ¶126). Under this theory of liability, "an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment." *Adames v. Sheahan*, 909 N.E.2d 742, 754 (Ill. 2009). Criminal acts, and even acts prohibited by the employer, can fall within the scope of an individual's employment, but an employee departs from the scope of their employment where he performs acts "different from the type of acts he is authorized to perform or [that] were performed purely in his own interest." *Wright v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996) (citing Restatement (Second) of Agency §228(2) (1958)); *Elston v. Cnty. of Kane*, 948 F.3d 884, 888 (7th Cir. 2020).

Babnik fails to state an invasion of privacy claim against the Village because, as described above, he fails to plausibly allege that the Village authorized or benefitted from the alleged invasion of privacy. Babnik does not allege that his phone calls were authorized by the Village, or recorded to serve or benefit the Village in any way; rather, he alleges that the recording was done "surreptitiously" and that his calls were recorded and used to "discredit[] employees and leverag[e] confidential information for *personal* benefit or gain," as opposed to the benefit of the Village. (Dckt. #84 ¶¶56, 81) (emphasis added). "An employee who acts purely in his own personal interest cannot create liability for his employer." *Elston*, 948 F.3d at 888.

15

For these reasons, the Court grants defendants' motions to dismiss with prejudice with respect to plaintiff's Eavesdropping Act and invasion of privacy claims against the Village.

**C. Plaintiff Adequately Alleges That Moritz and Nowotarski Violated His Rights Under the Federal Wiretap Act.**

Babnik alleges that Moritz and Nowotarski violated his rights under the Wiretap Act by illegally recording his calls on the Village PD landline. Defendants argue that Babnik fails to state a claim under the Wiretap Act because (1) there is no reasonable expectation of privacy in calls to or from a police department and (2) their conduct fell within the ordinary course of law enforcement activity. The Court disagrees.

The Federal Wiretap Act creates a cause of action against "any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. §2511(1)(a). The definition of "oral communication" in the Federal Wiretap Act "was intended to parallel the 'reasonable expectation of privacy' test created by the Supreme Court in *Katz v. United States*." *Matter of John Doe Trader No. One*, 894 F.2d 240, 242 (7th Cir. 1990); *see also Abbott v. Vill. of Winthrop Harbor*, 953 F.Supp. 931, 936 (N.D.Ill. 1996) ("Title III reflects Congress's attempt to codify the constitutional standards established by the Supreme Court."); *Walden*, 596 F.3d at 54 (stating that Congress enacted Title III in response to Supreme Court decisions and "in doing so attempted to provide at least as much protection as the Constitution affords"). Title III does *not* create liability for the use of a recording device "by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. §2510(5)(a)(ii).

As explained above, Babnik has plausibly alleged the existence of a reasonable expectation of privacy when making calls to or from the Village PD. *See supra* Section IV.A.i.

Furthermore, because he alleges that his calls were "targeted for surveillance" and "used for nefarious purposes," (Dckt. #84 ¶¶80–81), he has sufficiently alleged that the Village PD's recording of Babnik's calls does not fall within the law enforcement exception of the Wiretap Act. *Cf. Amati*, 176 F.3d at 956. Accordingly, the Court denies defendants' motions to dismiss Babnik's Wiretap Act claims against Moritz and Nowotarski.

### E. Plaintiff Adequately Alleges that Moritz and Nowotarski Violated His Rights Under the Illinois Eavesdropping Act.

Next, Babnik alleges violations of the Eavesdropping Act against Moritz and Nowotarski. Defendants argue that Babnik cannot state a claim under the Eavesdropping Act against Moritz or Nowotarski because he fails to allege facts showing either (1) the use of an eavesdropping device or (2) Moritz or Nowotarski's personal involvement. The Court disagrees.

The Eavesdropping Act creates liability for any person who "knowingly and intentionally . . . (3) [i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication;" or "(4) [m]anufactures, assembles, distributes, or possesses any electronic, mechanical, eavesdropping, or other device knowing that or having reason to know that the design of the device renders it primarily useful for" eavesdropping. 720 ILCS 5/14-2(a)(3)–(4).

Babnik plausibly alleges a claim under the Eavesdropping Act. He alleges that Moritz and Nowotarski, specifically, installed the recording system, (Dckt. #84 ¶41), and that they did so in order to "intercept, surveil, record, and disclose private communications," (*id.* ¶3). His complaint also alleges, in pointing to Moritz's comments on Babnik's personal calls, that Moritz himself overheard a recorded conversation. (*Id.* ¶79); *see LeCrone v. Ohio Bell Tel. Co.*, 201 N.E.2d 533, 538 (Ohio App. 1963) ("[T]he best circumstantial proof [of eavesdropping] would

be the repeating of information which could not otherwise be obtained.").  The Court can also infer from the fact that Moritz and Nowotarski installed the recording system that they used it to eavesdrop on conversations.  *See LeCrone*, 201 N.E.2d at 537–38 ("The fact of a tap may . . . be evidence from which to infer the fact of interception and eavesdropping.").

Defendant's motions to dismiss are denied with respect to plaintiff's Eavesdropping Act claims against Moritz and Nowotarski.

### F.  Plaintiff Adequately Alleges that Moritz and Nowotarski Invaded His Privacy.

Finally, Babnik alleges violations of his right to privacy under Illinois law, based on the tort of intrusion upon seclusion, against Moritz and Nowtarski.  Defendants argue that Babnik fails to state an invasion of privacy claim against Moritz or Nowotarski because: (1) he alleges no reasonable expectation of privacy; (2) his allegations of mental anguish and suffering are too general; and (3) he does not sufficiently allege that Moritz or Nowotarski intruded upon his seclusion.  Again, the Court disagrees.

To state a claim for intrusion upon seclusion, a complaint must allege that: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering."  *Socha v. City of Joliet, Ill.*, 107 F.4th 700, 710 (7th Cir. 2024), *quoting Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill.App.Ct. 2004).

For the reasons described above, Babnik adequately alleges (1) that he had a reasonable expectation of privacy when invited to make calls on landline telephones from the Village PD, *see supra* Section IV.A.i., and (2) Moritz and Nowotarski's personal involvement in installing the recording system, *see supra* Section IV.A.ii.

18

Babnik also adequately alleges that Moritz and Nowotarski committed an unauthorized intrusion upon his seclusion. "[T]he core of this tort is the offensive prying into the private domain of another"—"not publication or publicity," *Lovgren v. Citizens First Nat. Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989), but "discomfort caused by the intrusion itself," *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993). Eavesdropping by wiretapping is a quintessential example of such offensive prying. *Thomas*, 998 F.2d at 452; *Narducci v. Vill. of Bellwood*, 444 F.Supp.2d 924, 938 (N.D.Ill. 2006). Here, where plaintiff alleges that Moritz and Nowotarski were responsible for installing a recording system that recorded his personal and private calls, and which the Court can presume was used to eavesdrop upon those calls, he sufficiently alleges an intrusion upon his seclusion. (Dckt. #84 ¶¶41, 78); *see American Fed. of Teachers v. Bessent*, 152 F.4th 162, 172 (4th Cir. 2025) ("[I]t is not the information obtained, but the knowledge that a third party is engaged in targeted snooping, that causes the harm.").

Babnik's allegations of mental anguish and suffering are adequate at the pleading stage to put defendants on notice of his invasion of privacy claim. Evidence is not required at the motion to dismiss stage to state a claim. *Berk*, 2026 WL 135974, at *5.

Defendant's motions to dismiss are denied with respect to plaintiff's invasion of privacy claims against Moritz and Nowotarski.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), (Dckt. ##87, 88), are granted with prejudice with respect to plaintiff's claims against Hanson, Keim, Guttschow, and the Village of

Antioch,[4] and denied as to plaintiff's claims against Moritz and Nowotarski. Moritz and Nowotarski shall answer Babnik's claims against them on or before April 1, 2026.

**DATE:**      **March 11, 2026**

_[signature]_

**Jeffrey I. Cummings**
**United States District Court Judge**

---

[4] The Court in its discretion finds that dismissal with prejudice is appropriate in this case given that Babnik has had three opportunities to properly allege his claims against Hanson, Keim, Guttschow, and the Village and, for the reasons explained above, he has struck out. *See, e.g.*, *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("District courts have broad discretion to deny leave to amend" for a number of reasons, including "repeated failure to cure deficiencies.") (cleaned up).